The People *v.* Commissioners of Taxes, &c. in New York.

that he has, by his neglect, lost any lien on this judgment. After two years he ceased to be attorney, and could not have satisfied the judgment, or exercised any control over it. No other person but the plaintiff could then satisfy it. In the absence of any notice to the contrary, I think the defendants had good reason to presume that the plaintiff had settled with his attorney. But in addition thereto, he has waited seven years since the settlement, and until the defendant who made it is dead.

. It is too late to make such a motion, or to open a satisfaction of a judgment for such a purpose.

Motion denied.

[At Chambers, New York, May 15, 1861.  *Ingraham*, Justice.]

---

The People, *ex rel.* Hoyt, *vs.* The Commissioners of Taxes, &c. in New York.

This case is reported ante, p. 116. The following dissenting opinion of Justice Sutherland not having been received in time to be inserted, or noticed, in connection with the case, is published here.

Sutherland, J. (dissenting.)  Assuming that this case fairly presents the question, whether the relator could be taxed here for the goods and chattels which he owned in Louisiana or New Jersey, it is perfectly plain to me that the fiction of law, that personal property has no *situs*, but follows the person of its owner, has nothing whatever to do with that question. The question is between the sovereign and the subject or citizen, or between two independent sovereignties ; and whoever heard, before, of a fiction of law being applicable to any such question.

The question is not one of power or jurisdiction, but of construction or intention. I do not doubt the power of the legislature of this state to tax its residents in respect to prop-

erty which they own in other states or countries ; in other words, to tax their *persons* in respect of such property, or because they own such property, or receive an income from such property. The legislature of this state, under its constitution, has jurisdiction over persons and property within it, but none over persons or property without it, and in another independent state or territory, except such as is conceded by such other state or territory. No fiction of law can extend this jurisdiction to property in Louisiana or New Jersey. I know of no express provision or restriction, either in the present or any previous constitution of this state, which prevents, or has prevented, the taxation of residents in respect of property out of the state. But, for aught I see, the legislature of this state has, and always has had, the same power and reason for taxing its residents in respect of real property as personal, out of the state.

It is absurd to say that the legislature of this state has power to tax either personal or real property out of this state and in another state ; or that a fiction of law can bring either personal or real property here for taxation. It must be conceded, I think, that it has, and always has had, power to tax *persons* within this state, in respect of or because they owned either real or personal property out of this state.

As I have said, the question in this case is not one of power, but of intention, of construction. Did the legislature, by the laws under which the relator was taxed, intend to tax persons or property ? If persons, then the tax is, in effect, a poll, capitation or income tax, although the rate is fixed by the value, or the supposed value, of the personal property out of the state ; but I see no constitutional objection to such a tax : if property, then the tax is illegal, for it is absurd to say that the legislature had power to tax, or ever intended to tax, property in Louisiana or New Jersey.

As to taxes on or for personal property in this state, the form of the tax, whether on the property, or on the person in respect of the property, is quite immaterial ; but on the ques-

tion which I assume to be presented by this case, the form of the tax is of controlling importance, as bearing on the question of intention. There are, certainly, provisions or forms of expression in some of the statutes, regulating the imposition and collection of taxes, quite consistent with an intention to tax residents in respect of their goods and chattels in another state ; but there are other provisions which appear to be inconsistent with such intention; the provisions, for instance, regulating the duties of the assessors in making out the assessment roll, ascertaining the value of the property, &c. Can it be supposed that it was intended that they should ascertain the value of property in Russia or California ? No matter what the practice may be, I think the theory of these statutes was, that the assessors should ascertain the value of the personal property, not that they should put it down at a guess, in round figures, so large that the party would be obliged to swear it off.

The revised statutes have a title declaring what property shall be liable to taxation. It declares that "all lands and all personal estate within this state" shall be so liable, subject to certain exemptions afterwards specified. The specification of the exemptions, in section 4 of the title, as plainly shows that property, and not persons, was the subject of taxation, as the previously expressed declaration of the statutes. It is in form the personal property of the minister of the gospel, and not the minister, which is exempt, &c. The addition of the words "within this state," adds no force to the declaration of the revised statutes, nor does the omission of them in previous statutes, in the act of 1801, of 1813, or of 1823, show that it was the intention of those acts to tax goods and chattels out of the state. If the legislature intended to tax property and not persons, why should they declare they meant property within the state ? They must be presumed to have meant property within the state only, for their jurisdiction was and is limited to the state.

I am not willing to concede, either, that personal property

within this state belonging to non-residents, could not be taxed, prior to the act of 1855. I am inclined to think that, under the provisions of the revised statutes, all personal property in this state, lawfully in the possession of any resident, except that expressly exempted, was liable to taxation. I say this, after an examination of the cases in 16 *Barbour*, and 4 *E. D. Smith*, cited on the argument. Certainly, the relator's goods and chattels in Louisiana and New Jersey are liable to be taxed in those states, although he may be liable to be taxed for them in this state. Is it to be presumed that the legislature intended to subject the relator, or his property, to double taxation?

Upon the whole, I am inclined to think that the commissioners erred in this case, in determining not to reduce the relator's tax.

I do not intend to speak with confidence, for other pressing judicial duties have absolutely prevented that laborious examination of the question which its importance and difficulties would seem to claim.

I am confident that the commissioners and my learned associates, in considering the question, have given to the maxim or fiction of law, that personal property has no *situs*, but follows the person, a place, and an importance, which the nature of the question does not warrant. I have said what I have, more with a view of showing this, than with the expectation of throwing much light on the real question in the case.

If the legislature intended to tax persons in respect of their goods and chattels out of this state, there is no occasion, in this case, of resorting to this fiction of law; if the legislature intended to tax property, and not persons, then no law, or fiction of law, can either bring the goods and chattels into this state or carry the law into another state, where the goods and chattels are. If the relator's personal property in Louisiana had consisted of slaves, a tax on them

would have presented difficulties and questions which need not be pointed out.

It is hardly necessary to say, that if the relator's property had consisted of debts due on account, contract, note, bond, &c. such property having no *situs*, except his pocket or person, it would have been taxable here, no matter where his debtors resided, without the aid of this fiction of law.